**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SIGNEO INTERNATIONAL LIMITED,**

           **Plaintiff,**

**-vs-**                                                             **Case No. 6:12-cv-1884-Orl-DAB**

**STACY ROSS WADE, an individual,**
**NIMBUS, INC.,**

           **Defendants.**
_____

## ORDER

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**    **MOTION TO DISMISS COMPLAINT (Doc. No. 4)**
>
> **FILED:**      **December 26, 2012**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

Plaintiff, alleged to be a Hong Kong corporation with a principal United States office in Florida, filed a four count Complaint in state court against Kentucky Defendants, alleging state law claims arising out of a business relationship. Defendants removed the Complaint to this Court pursuant to diversity jurisdiction,[1] and consented to the jurisdiction of the undersigned. Defendants move to dismiss the Complaint pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6) for failure to state a cause of action; Rule 12(b)(2) for lack of personal jurisdiction; Rule 12(b)(1) for lack of standing; and Rule 12(b)(3) for improper venue. Plaintiff opposes dismissal (Doc. 18), and the matter

---

[1] Federal jurisdiction pursuant to 28 U.S.C. § 1332 exists only when there is complete diversity between the plaintiffs and the defendants and the amount in controversy requirement is met. *See Owen Equip. and Recreation Co. v. Kroger*, 437 U.S. 365, 98 S. Ct. 2396, 57 L. Ed. 2d 274 (1978).

is ripe for resolution.  As the Court finds the Complaint fails to adhere to federal pleading standards, the motion is **granted,** and the Complaint is **dismissed, without prejudice and with leave to file an amended complaint.**

*Standard of Review*

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). Federal Rule of Civil Procedure 8(a)(2) requires that the complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). A reviewing court generally accepts the complaint's allegations as true and construes them in the light most favorable to the plaintiff, "[b]ut if allegations are indeed more conclusory than factual, then the court does not have to assume their truth." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012).

To withstand a motion to dismiss, the complaint must contain factual allegations that are "enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  As the Supreme Court has noted:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Twombly,* 550 U.S. 544] at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid.*

*Ashcroft v. Iqbal,* 556 U.S.662, 129 S.Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. 544, 555.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 *(quoting Twombly*, 550 U.S. at 557).

In addition to the general pleading standards of Rule 8, Federal Rule of Civil Procedure 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). A complaint satisfies Rule 9(b) if it sets forth "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (internal citation omitted). Moreover, when a plaintiff claims fraud by several defendants, "the complaint should contain specific allegations with respect to each defendant; generalized allegations 'lumping' multiple defendants together are insufficient." *W. Coast Roofing & Waterproofing, Inc. v. Johns Manville, Inc.*, 287 Fed. Appx. 81, 86 (11th Cir. 2008). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1012 (11th Cir. 2005); *see also U.S. ex rel. Clausen v. Laboratory Corp. of America,* 290 F.3d 1301, 1310 (11th Cir. 2002) ("[T]his court has endorsed the dismissal of pleadings for failing to meet Rule 9(b)'s standards." (collecting cases)).

*The allegations of the Complaint*

In true shotgun fashion,[2] Plaintiff incorporates the following allegations (among others) into each count of its Complaint:

> 11. Plaintiff and Nimbus, entered into an agreement for Nimbus to provide creative and marketing support dated April 16, 2012 ("Creative Contract").
>
> 12. Plaintiff provided to Nimbus access to its website www.soulelectronics.com in order to perform its services.

---

[2] Shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir.2006). In this circuit, such pleadings are frowned upon and viewed "with great dismay." *Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp.,* 305 F. 3d 1293, 1296, n. 9 (11th Cir. 2002).

13. Without informing or obtaining consent from Plaintiff, without authority Mr. Wade, individually and on behalf of Nimbus, at some point in time changed Plaintiff's web hosting platform to Rackspace, and created a username and password and has refused to provide Plaintiff access to Rackspace and the back end of Plaintiff's own website. In essence, Mr. Wade and Nimbus took Plaintiff's website hostage.

14. By Defendants' own admission, on October 19, 2012, Mary Ann Zimmer ("Ms. Zimmer"), who held herself out to be Nimbus' attorney confirmed that Defendants have and will in fact continue to hold Plaintiff's website hostage unless Plaintiff paid Defendants' invoices for an alleged unrelated contract, which amount Defendants claimed to be $118,418.34 under two invoices (See Exhibit 2 -email dated October 19, 2012, from Defendants' attorney Mary Ann Zimmer and copies of invoices)

15. Plaintiffs website is valuable property and is the heart of its business. The website showcases Plaintiffs co-branding partnerships with Tim Tebow (NFL Player), Usain Bolt (6 time Olympic Gold Medalist and a/k/a the Fastest Man in the World), Ludacris (performing artist and actor) among other world renowned celebrities. The website also on an almost daily basis showcases celebrities worldwide who send in pictures wearing Plaintiff's products or fan comments of Plaintiff's products. Further, Plaintiff sells its products on the website. (See Exhibit 3 - print out of Plaintiffs website)

16. The wrongful actions of Mr. Wade and Nimbus taking hostage of one of Plaintiff's most valuable assets and interfering with Plaintiff's ability to do business constitutes extortion in an attempt to force Plaintiff into paying over $100,000 under a purported contract which Mr. Wade and Nimbus knowingly and fraudulently misrepresented to Plaintiff as being genuine.

17. On October 16, 2012, Ms. Zimmer emailed to Plaintiff a demand for $118,418.34, and attached a copy of the Fraudulent Contract that Defendants claim "were specifically agreed to by Signeo through Sarah Westbrook." (See Exhibit 4 - Ms. Zimmer's email dated October 16, 2012, attaching a fraudulent contract referred to as the "Fraudulent Contract".)

18. On October 22, 2012, Ms. Zimmer increased the amount of her demand for money and again attached the Fraudulent Contract. Ms. Zimmer falsely represented that "the amendment remains unsigned ... My client has performed its obligations fully and professionally in every way." (See Exhibit 5-Ms Zimmer's email dated October 22, 2012 again attaching Fraudulent Contract.)

19. Sarah Westbrook was formerly the VP of Marketing for Plaintiff's US subsidiary and is no longer employed there.

20. After Ms. Westbrook's termination with Plaintiff's company, Plaintiff began to inquire of Nimbus of its services and for a copy of the contract to justify Nimbus' invoices.

21. Without Ms. Westbrook to verify the terms of the contract, Defendants saw an opportunity to commit fraud upon Plaintiff and provided to Plaintiff the Fraudulent Contract and misrepresented that said Fraudulent Contract has never been signed and further that Nimbus has fully performed all of its obligations under the Fraudulent Contract.

22. Defendants and Ms. Zimmer went on an aggressive and harassing campaign to contact Plaintiff and many of its employees almost daily and often more than once a day by phone, email, mail and overnight mail, to harass and defame Plaintiff, notifying Plaintiff's employees that it was a dead beat refusing to pay its financial obligations, despite Plaintiff's repeated requests for Defendants to stop and that Plaintiff disputed the charges and questioned the validity of the Fraudulent Contract.

23. Defendants further took Plaintiff's website hostage to apply additional pressure and to cause Plaintiff pecuniary harm to force Plaintiff to blindly rely upon the Fraudulent Contract and to pay before Plaintiff could investigate and find the actual signed contract.

24. The actual contract was fully executed by Mr. Wade himself and Ms. Westbrook on June 20, 2012 and the terms are different than the Fraudulent Contract. Mr. Wade's signature on June 20, 2012 is evidence that at the time he represented the Fraudulent Contract to be accurate and unsigned in October that he knew his statements not to be true. (See Exhibit 6 - Executed Contract)

25. Nimbus has failed to comply with the obligations of the Executed Contract.

26. As a result of Defendants' fraud, Plaintiff has tendered to Nimbus approximately $747,030.66 based upon the Fraudulent Contract, which based upon the Executed Contract, Nimbus has failed to fully perform, has breached the terms thereof and has been far over paid.

27. Mr. Wade, individually, and on behalf of Nimbus have taken a concerted course of action with a specific intent to defraud and directly harm Plaintiff.

28. Plaintiff is unable to fully operate its website.

29. Plaintiffs harm is accruing and continuing day to day.

30. Defendants have refused to return Plaintiff's over paid funds to it and is wrongfully retaining said funds despite Plaintiff's request for return of said funds.

31. Mr. Wade has taken actions that would not afford him of the protection of the corporate veil; and therefore, he is personally liable for his wrongful actions.

32. Plaintiff has made repeated efforts to resolve these issues with Defendants, orally and in writing, but to no avai1.

(Doc. 2).

Based on the above, Plaintiff contends that Defendants are liable for breach of contract (Count I), unfair and deceptive trade practices under Section 501.204, Florida Statutes (Count II), conversion (Count III), and "Civil Remedy for Fraudulent Practices" under Section 772.104, Florida Statutes (Count IV).

*Issues and Analysis*

While Defendants raise numerous objections to the Complaint, citing arbitration provisions, lack of personal jurisdiction, venue, standing and other defects, the Court finds the objection with respect to the failure to state a claim under the pleading standard to be primary and dispositive.[3] As shown above, the purported wrongs are set forth and lumped together in conclusory fashion, without the specificity required for the "fraud" alleged. By incorporating all of the alleged wrongdoings into each and every count, the Court cannot ascertain exactly which allegations go with what cause of action. Moreover, when the bald conclusions are disregarded, the Complaint fails to plead enough *facts* to sustain each Count. *See Iqbal*, 556 U.S. at 679 ("a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. . . . When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.").

*Count One – Breach of Contract against Nimbus*

In addition to re-alleging all of the foregoing allegations, Count I purports to allege breach of contract against Nimbus for changing a "hosting platform," withholding a user name and password for the website, and not providing detailed invoicing under the Creative Contract, attached to the

---

[3]Indeed, the Court cannot evaluate most of the other objections without first determining what the claims are.

Complaint as Exhibit 1.[4]  As pointed out by Defendants, however, the Creative Contract has no reference to hosting platforms nor does it contain any provisions setting forth an obligation to provide detailed invoicing upon demand.  It is, upon a plain reading, a retainer agreement where Plaintiff, through its Vice President of Marketing Sarah Westbrook, agreed to pay Nimbus $120,000 per year payable at $10,000 per month to provide specific enumerated marketing tasks.  Although Plaintiff alleges that "Nimbus has breached the terms and conditions of the Creative Contract," it fails to identify any term so breached.  As such, Plaintiff fails to state a plausible cause of action for breach of this contract.

*Count Two – Unfair and Deceptive Trade Practices*

In this Count, Plaintiff alleges that Defendants have engaged in business practices that are deceptive, unlawful, unconscionable, and unfair under Section 501.204, Florida Statutes, in that they "wrongfully obtained and restrained access to Plaintiff's website," and "prohibited access to said website for Plaintiff to conduct its business," and has "essentially placed a vice [sic]" on Plaintiff's ability to fully utilize its website (Allegations 52-53).

The Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") protects "the consuming public and legitimate business enterprises from those who engage in unfair methods of competition or unconscionable, deceptive or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.212(2).  Although FDUTPA does not require proof of actual fraud, the consumer must prove that the seller engaged in "unfair or deceptive acts or practices" to be entitled to relief. *Shibata v. Lim*, 133 F.Supp.2d 1311, 1317 (M.D. Fla. 2000). The term "unfair or deceptive acts" is not clearly defined, but may require conduct that offends established public policy, and is

---

[4]The Court is entitled to consider the terms of documents attached to and incorporated by reference in the Complaint, when determining a motion to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla. Inc.,* 116 F.3d 1364, 1369 (11th Cir.1997) ("the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto.").

"immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Shibata,* 133 F.Supp.2d at 1317. *See also Baxter-Smallwood v. Remington Holdings, L.P.*, No. 6:11-CV-1829-ORL-36, 2012 WL 1114237, 6 (M.D. Fla. Mar. 16, 2012), *adopted by* 2012 WL 1114153 (M.D. Fla. Apr 02, 2012).  Importantly, however, courts have held that "FDUTPA applies only to actions that occurred within the state of Florida." *Five for Entertainment S.A. v. Rodriguez*, 877 F.Supp.2d 1321, 1330 -1331 (S.D. Fla. 2012), *citing Carnival Corp. v. Rolls–Royce PLC*, Case No. 08–23318, 2009 WL 3861450, *6 (S.D. Fla. 2009), and *Millennium Commc'ns & Fulfillment, Inc. v. Office of Attorney Gen.*, 761 So.2d 1256, 1262 (Fla. 3d DCA 2000).  As explained in more detail below, here, the Complaint is void of any allegation that the unfair practice complained of – the "hijacking" of the website – occurred in Florida and the remaining allegations do not support such an inference.[5]  As such, the Complaint fails to state a cause of action under FDUTPA.

*Count III – Conversion*

With respect to the conversion count, both parties appear to proceed under the assumption that Florida law applies to this claim, which is also based on the alleged "hijacking" of the website. As with the FDUPTA count, however, the Court sees no basis for such assumption, absent any allegation that any act pled occurred in Florida.  Based upon review of the pleading, the specifics of the "hijacking" are not set forth with sufficient detail to evaluate the claim.

Plaintiff alleges that Nimbus was provided access to its website (Allegation 12) and "at some point in time" Defendant "changed the web hosting platform." (Allegation 13).  Although Plaintiff claims to have no access to the website, the email correspondence attached to and incorporated into

---

[5]The connection between the parties, the actions vaguely pled, and the State of Florida is tenuous, at best. Indeed, as pointed out by Defendants, Plaintiff is a foreign corporation and, although it alleges that it has a Florida office, the public records do not reflect that it is registered to do business in the state.  Also, the non-resident Defendants have contested the Court's assertion of personal jurisdiction over them with respect to any of the allegations, although briefing on this issue by both sides is anemic. For present purposes, the Court need not determine whether personal jurisdiction is appropriate, as the Complaint fails to state a cause of action, as pled.

-8-

the complaint indicates that "Signeo continues to have access to CMS,[6] which does require user name(s) and password, and it [is] able to modify the website as it may desire." (Exhibit 2 to Complaint). In addition to the lack of detail regarding the alleged tort, there is an absence of any facts sufficient to support an inference that Wade was acting individually, on his own behalf, as alleged. While there may be a claim for conversion under Florida law somewhere in the parties' dealings with each other, Plaintiff has not adequately pled it here. To the extent that this claim may be the only claim that survives on amendment, Plaintiff must also show that the damages allegedly suffered meet the amount in controversy requirements for invoking the diversity jurisdiction of this Court.

*Count IV – Civil Remedies for Fraudulent Practices*

To the extent this count purports to state a cause of action based on fraud, the allegations are not pled with the particularity required to meet the federal pleading standard. As Judge Dalton has recently noted in a similar context:

> Plaintiff must identify *specific* misrepresentations in the transaction documents or related communications, allege who made the misrepresentations, when the misrepresentations were made, how the misrepresentations misled him, and the alleged benefit which accrued to each Defendant. *See, e.g., Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1291–92* (11th Cir.2010) (holding Rule 9(b)'s requirement for particularity requires more than pointing to e-mail and letter communications between Defendants and Plaintiffs).

*Fellner v. Cameron,* No. 2:10-cv-155-FTM-99; 2012 WL 1648886, 3 (M.D. Fla. May 10, 2012). Although, as set forth above, Plaintiff points to emails and conclusorily asserts that there is a "Fraudulent Contract," he fails to identify the particular *specific* statements that it contends are intentional misrepresentations (and allege facts to support such an inference), how the statements misled Plaintiff and how *each* Defendant benefitted.

---

[6]This term is not explained in the correspondence. As with most of the Complaint and the briefing, the parties are vague about critical details of their dealings with each other.

Moreover, the Count fails to state a cause of action to the extent it purports to allege violations of The Florida Civil Remedies for Criminal Practices provision—Florida's RICO equivalent. Plaintiff alleges that "Defendants have demonstrated a pattern of criminal activity in violation of Section 772.103, Florida Statutes." (Allegation 71). That provision provides:

It is unlawful for any person:

(1) Who has with criminal intent received any proceeds derived, directly or indirectly, from a pattern of criminal activity or through the collection of an unlawful debt to use or invest, whether directly or indirectly, any part of such proceeds, or the proceeds derived from the investment or use thereof, in the acquisition of any title to, or any right, interest, or equity in, real property or in the establishment or operation of any enterprise.

(2) Through a pattern of criminal activity or through the collection of an unlawful debt, to acquire or maintain, directly or indirectly, any interest in or control of any enterprise or real property.

(3) Employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of criminal activity or the collection of an unlawful debt.

(4) To conspire or endeavor to violate any of the provisions of subsection (1), subsection (2), or subsection (3).

Fla. Stat. § 772.103. Plaintiff does not identify which subsection of the provision is alleged. This, alone, warrants dismissal.

Additionally, § 772.104(1) of the state law provides civil remedies for violations of § 772.103. Section 772.102 defines a "pattern of criminal activity" as "engaging in at least two incidents of criminal activity that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents." § 772.102(4), Fla. Stat. (2000). Importantly, § 772.102(4) also notes, "For the purposes of this chapter, the term 'pattern of criminal activity' shall not include two or more incidents of fraudulent conduct arising out of a single contract or transaction against one or more related persons." § 772.102(4).

-10-

> Thus, to bring a RICO action in Florida, a plaintiff has to show "there has been some sort of ongoing criminal behavior." *Ginsberg v. Lennar Fla. Holdings*, 645 So.2d 490, 501 (Fla. 3d DCA 1994). The purpose of the statutes "is to punish, through civil penalties, actions which are ongoing and criminal in nature." *Id*. To maintain an action under section 772.103, a plaintiff must plead the necessary predicate acts or continuity of endeavor. *See id.*

*Eagletech Communications, Inc. v. Bryn Mawr Inv. Group, Inc*., 79 So.3d 855, 864 (Fla.4th DCA 2012).

Applied here, at best, the Complaint alleges two "wrongs" – the "hijacking" of the website and a disagreement over the terms of the acknowledged business relationship between the corporate defendants. This is insufficient. The Court agrees with the sentiment expressed by Judge King of the Southern District that "wrongful overcharges . . . are not synonymous with the meaning of misrepresentation in the context of the RICO statute" and "Plaintiff[] should not be permitted to alchemize their claims for breach of contract into ones for civil RICO conspiracy." *In re Checking Account Overdraft Litigation,* 797 F.Supp.2d 1323, 1332 (S.D. Fla. 2011).[7] Moreover, there is no factual basis pled to find the "continuity" required.

> In order to prove a pattern of racketeering in a civil or criminal RICO case, a plaintiff must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240, 109 S.Ct. 2893, 2901, 106 L.Ed.2d 195 (1989). "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates *extending over a substantial period of time*." *Id*. at 242, 109 S.Ct. at 2902.

---

[7]Although Judge King based his conclusions on interpretation of the federal RICO statute and not Florida's version, the reasoning is equally applicable here as Florida's RICO statute is patterned after the federal law. *Jackson v. Bellsouth Telecomms.,* 372 F.3d 1250, 1263–64 (11th Cir.2004).

*American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (emphasis added). Put simply, Plaintiff has not pled enough specific facts to meet the heightened pleading standard for stating a cause of action under Florida's RICO statute.[8]

# *Conclusion*

As the Complaint, as pled, currently fails to state a cognizable cause of action within the subject matter jurisdiction of this Court, it is due to be dismissed, and the Court need not reach the other arguments. Therefore, the motion is **granted,** and the Complaint is **dismissed, without prejudice to the filing of an Amended Complaint** which meets the pleading standards within 14 days of the date of this Order. In addition to pleading a cognizable cause of action, any such pleading must also set forth sufficient allegations to show that this Court has subject matter jurisdiction over the claim or claims (including an adequate demonstration of the amount in controversy as to each defendant) and personal jurisdiction over the Defendants.

Moreover, to the extent Plaintiff seeks to assert a claim pursuant to The Florida Civil Remedies for Criminal Practices provision (Florida's RICO equivalent), Plaintiff is advised that, consistent with the established practice of other judges with respect to RICO claims filed in this Division, all parties filing RICO claims must also file a RICO Case Statement. Thus, should the Amended Complaint contain a RICO claim, Plaintiff **shall also file** a RICO Case Statement, which shall include the facts upon which the Plaintiff is relying to initiate any RICO claim it alleges in the Amended Complaint as a result of the "reasonable inquiry" required by Rule 11 of the Federal Rules of Civil Procedure. In particular, this statement shall be in a form which uses the numbers and letters as set forth below, and shall state *in detail and with specificity* the following information.

---

[8] Moreover, the "violations" of various Florida criminal statutes are pled in a conclusory fashion without a sufficient factual basis to conclude that these non-residents acting outside the state are nonetheless subject to suit for these criminal violations. *See generally* Florida Statute § 910.005.

1. State whether the alleged unlawful conduct is in violation of Fla. Stat. § 772.103(1), (2), (3), and/or (4).

2. List each Defendant and state the alleged misconduct and basis of liability of each Defendant.

3. List the alleged wrongdoers, other than the Defendants listed above, and state the alleged misconduct of each wrongdoer.

4. List the alleged victims and state how each victim was allegedly injured.

5. Describe in detail the pattern of racketeering activity or collection of unlawful debts alleged for each RICO claim. A description of the pattern of racketeering shall include the following information:

a. List the alleged predicate acts and the specific statutes which were allegedly violated:

b. Provide the dates of the predicate acts, the participants in the predicate acts, and a description of the facts surrounding the predicate acts;

c. If the RICO claim is based on the predicate offenses of wire fraud, or fraud in the sale of securities, the "circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Identify the time, place and contents of the alleged misrepresentations, and the identity of persons to whom and by whom the alleged misrepresentations were made;

d. State whether there has been a criminal conviction for violation of the predicate acts;

e. State whether civil litigation has resulted in a judgment in regard to the predicate acts;

f. Describe how predicate acts form a "pattern of racketeering activity"; and

g. State whether the alleged predicate acts relate to each other as part of a common plan. If so, describe in detail.

6. Describe in detail the alleged enterprise for each RICO claim. A description of the enterprise shall include the following information:

a. State the names of the individuals, partnerships, corporations, associations, or other legal entities, which allegedly constitute the enterprise;

b. Describe the structure, purpose, function and course of conduct of the enterprise;

c. State whether any Defendants are employees, officers or directors of the alleged enterprise;

d. State whether any Defendants are associated with the alleged enterprise;

e. State whether you are alleging that the Defendants are individuals or entities separate from the alleged enterprise, or that the Defendants are the enterprise itself, or members of the enterprise; and

f. If any Defendants are alleged to be the enterprise itself, or members of the enterprise, explain whether such Defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.

7. State and describe in detail whether you are alleging that the pattern of racketeering activity and the enterprise are separate or have merged into one entity.

8. Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity. Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.

      9. Describe what benefits, if any, the alleged enterprise receives from the alleged pattern of racketeering.

      10. Describe the effect of the activities of the enterprise in interstate or foreign commerce (if applicable).

      11. If the Complaint alleges a violation of § 772.103(1), provide the following information:

      a. State who received the income derived from the pattern of criminal activity or through the collection of an unlawful debt; and

      b. Describe the use or investment of such income.

      12. If the Complaint alleges a violation of § 772.103(2), describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise.

      13. If the Complaint alleges a violation of § 772.103(3), provide the following information:

      a. State who is employed by or associated with the enterprise; and

      b. State whether the same entity is both the liable "person" and the "enterprise."

      14. If the complaint alleges a violation of §772.103(4), describe in detail the alleged conspiracy.

      15. Describe the alleged injury to business or property.

      16. Describe the direct causal relationship between the alleged injury and the violation of the RICO statute.

      17. List the damages sustained for which each Defendant is allegedly liable.

**DONE** and **ORDERED** in Orlando, Florida on April 1, 2013.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record